IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:18CR391 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE PATRICIA A. GAUGHAN |
| v. | ) | |
| | ) | UNITED STATES OF AMERICA'S |
| RICHARD SPENCER, | ) | SENTENCING MEMORANDUM |
| | ) | |
| Defendant. | ) | |
| | ) | |

Now comes the United States of America, by its counsel, Justin E. Herdman, United States Attorney, and Carmen E. Henderson and Robert W. Kern, Assistant United States Attorneys, and respectfully submits this Sentencing Memorandum in anticipation of the sentencing hearing set for Monday, May 6, 2019, at 11:30 a.m.

Respectfully submitted,

Justin E. Herdman
United States Attorney

By: /s/ Robert W. Kern
Robert W. Kern (OH: 0005161)
Carmen E. Henderson (OH: 0089212)
Assistant U.S. Attorneys
Suite 400, U.S. Courthouse
801 West Superior Avenue
Cleveland, Ohio 44113
Tel. No. (216) 622-3836/3967
Fax No. (216) 522-2403
E-mail: Robert.Kern@usdoj.gov
E-mail: Carmen.Henderson@usdoj.gov

**MEMORANDUM**

This memorandum will address the primary components of this Court's consideration of Defendant's sentence.  On July 17, 2018, a federal Grand Jury sitting in Cleveland, Ohio, returned a 15 count Indictment charging Defendant, Richard Spencer, with violations of Title 26, U.S.C., § 7202, for failing to account for, collect and pay over federal employment taxes for RS Sewing between July 31, 2012, and January 31, 2016, totaling approximately $162,728.94, exclusive of penalties and interest.  On January 22, 2019, Defendant, Richard Spencer, pleaded guilty to Count 1 of the Indictment, charging a violation of Title 26, U.S.C., § 7202 for the quarter ending June 30, 2012.

The first part of this memorandum will discuss the loss amount, sentencing enhancement applicability and corresponding guidelines calculation under the advisory United States Sentencing Guidelines ("USSG").  Next, the government will discuss the factors set forth in Title 18, U.S.C., § 3553 and their application to this case.  Finally, the government will discuss its position on sentence and restitution.

**I.     Guideline Calculation**

    **A.     Loss Amount**

As an initial matter, a district court is required to make a finding as to loss amount by a preponderance of the evidence using a reasonable estimate predicated upon the facts of the case. The Sixth Circuit Court of Appeals has announced that a district court determines loss by a preponderance of evidence standard.  *United States v. Blackwell*, 459 F.3d 739, 772 (6th Cir. 2006) (*citing United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005)).  In describing the above standard for ascertaining a loss amount, the Sixth Circuit noted that, "the district court's findings are not to be overturned unless they are clearly erroneous." *United States v. Triana*, 468 F.3d 308, 321 (6th Cir. 2006) (*citing United States v. Guthrie*, 144 F.3d 1006, 1011 (6th Cir.

1998)) *See United States v. Poulsen*, 655 F.3d 492, 512-513 (6th Cir. 2011) (reviewing the District Court's adherence to Rule 32(i) of the Federal Rules of Criminal Procedure as part of making a ruling on loss amount) and *United States v. Abdelsalam*, 311 Fed.Appx. 832, 845-846, 2009 WL 415987 (6th Cir. 2009).  With respect to adjudicating the loss amount arising from financial frauds, the *Triana* court noted, "[i]n situations where the losses occasioned by financial frauds are not easy to quantify, the district court need only make a reasonable estimate of the loss, given the available information.  Such estimates 'need not be determined with precision.'" *Triana*, *supra*., at 320.  (citations omitted) (*citing United States v. Miller*, 316 F.3d 495, 503 (4th Cir. 2003) and Application Note 2, subpart (C), to USSG § 2B1.1)[1].  The *Triana* court also noted the USSG's distinction between "actual loss" and "intended loss."  *Id*.  "Actual loss" is "the reasonably foreseeable pecuniary harm that resulted from the offense."  *Id*. (*citing* Application Note 2, subpart (A)(I) and (ii), to USSG § 2B1.1)[2].  "Intended loss" is "the pecuniary harm that would have been possible or likely to occur."  *Id*. (citations omitted.)  In analyzing the foregoing distinction, the *Triana* court followed Application Note 2 to USSG § 2B1.1 which states that, "loss is the greater of actual loss or intended loss."  *Id*.  Therefore, a district court must determine the greater of actual loss and intended loss, making a reasonable estimate, by a preponderance of the evidence.

      A defendant's loss calculation is predicated upon the actual loss or intended loss caused by defendant's conduct rather than his or her own personal gain as a result of the criminal conduct.  In *Triana*, the defendant, who had previously been convicted of health care fraud, was

---

[1] In the 2016 edition of the USSG, the notion of a "reasonable estimation of loss" is set forth in § 2B1.1, Application Note 3(C), p. 96.

[2] In the 2016 edition of the USSG, the definitions of "Actual Loss," "Intended Loss," and "Pecuniary Harm" as described in § 2B1.1, Application Note 3(A)(i)(ii) and (iii), respectively, p. 95-6.

convicted of fraudulently billing Medicare, through his company, for approximately $2,900,000 for podiatric services and receiving approximately $1,700,000 in payments.  The district court found the appropriate loss amount to be $1,700,000.  On appeal, Triana argued that his loss amount should have been the amount of his own personal gain.  The *Triana* court rejected this argument in holding, "[c]ourts have consistently held that in calculating loss, 'substitution of defendant's gain is not the preferred method because it ordinarily *underestimates* the loss.'" (emphasis in original.) *Id*., at 323. (*citing United States v. Snyder*, 291 F.3d 1291, 1295 (11th Cir. 2002), *United States v. Chatterji*, 46 F.3d 1336 (4th Cir. 1995) and *United States v. Haddock*, 12 F.3d 950, 960 (10th Cir. 1993)).  Accordingly, a defendant is legally responsible for the entire scope of the financial harm occasioned by their criminal conduct, not merely the benefit they personally received.

The Sixth Circuit has also addressed circumstances wherein a defendant disputes the loss amount stated in the Presentence Investigation Report (PSR) submitted to a court.  Although there is no dispute on loss in this case, when the loss amount is disputed the government must demonstrate the loss amount by a preponderance of the evidence or the district court must engage in a fact-finding process.  *Poulsen*, *supra*., 655 F.3d at 513.  The *Poulsen* Court noted, "[the court may not blindly accept the PSR, but '[when a defendant fails to produce any evidence to contradict the facts set forth in the PSR, a district court is entitled to rely on those facts when sentencing the defendant.'" *Id*. (*quoting United States v. Garcon*, 506 F.3d 461, 467 (6th Cir. 2007)).  Therefore, the *Poulsen* Court held that the government's burden to produce evidence is "triggered" when a defendant offers something more than a "bare denial" regarding the accuracy of the loss amount described in the PSR.[3]  *Id*.

---

[3]  In *Poulsen*, defense counsel's argument at sentencing that the "loss amounts were not proven at trial" was rejected as the loss amount is determined by "losses stemming from criminal activity based on a preponderance of

4

In the present case, the loss amount is calculated as one group since all of the counts arise from violations of 26 U.S.C. § 7202 (Failure to Account for, Collect and Pay Over Federal Employment Taxes).  In this case, the Defendant is charged with criminal offenses which occurred between July 2012 and January 2016, totaling approximately $162,728.94, exclusive of interest and penalties (for purposes of restitution).

As set forth in the plea agreement factual basis, the $162,728.94 figure represents only the employees' portion of the FICA taxes and the federal income taxes withheld from the employees' wages.  By comparison, the stipulated "loss" for purposes of calculating the Defendant's offense level under the advisory Sentencing Guidelines includes not only the employees' portion of FICA and withheld federal income taxes that were not paid over to the IRS, but also includes the employer's portion of the employment taxes for the time period, which amounts to an aggregate loss to the United States of approximately $839,355.

Defendant's conduct in this case is especially egregious, not only because it occurred over an extended period of time, but because it involved repeated and willful failures to withhold and pay over to the IRS significant sums of money which Defendant withheld from the earnings of the employees of RS Sewing.  It is particularly noteworthy that Defendant's conduct as charged in the Indictment in this case occurred <u>after</u> his business (RS Sewing) was audited by the IRS for failure to comply with employment tax obligations, <u>and</u> the Defendant was personally assessed a civil Trust Fund Recovery Penalty because of his responsibility for overseeing the corporation's financial operations, including payroll and employment taxes.  His conduct herein is also egregious since it occurred <u>after</u> he was caught intentionally misclassifying workers as independent contractors rather than employees specifically to thwart his obligations to account

---

the evidence." *Id*., <u>supra</u>, 655 F.3d 513-514.

for, collect and pay over employment taxes and withheld income taxes from the workers. For these reasons, the United States submits that a sentence at the high-end of the applicable guidelines range is warranted.

### B.  Sentencing Enhancements/ Calculation of Offense Level

Although the parties have no agreement as to what the ultimate sentence in the case should be, the parties have agreed that no sentencing enhancements beyond the calculation of loss apply in this case. Accordingly, Defendant's USSG guideline calculation is as follows:

| Count 1 – Willful failure to account for, collect and pay over employment taxes in violation of 26 U.S.C. § 7202 | | |
|---|---|---|
| Loss: (between $550,000 - $1,500,000) | 20 | § 2T4.1(H) |
| **Total Offense Level before Acceptance of Responsibility** | **20** | |
| **Acceptance of responsibility** | **-3** | §3E1.1(a)( and (b) |
| **Total Offense Level** | **17** | |

## II.  Application of Title 18 U.S.C. § 3553 Factors

### A.  Standard for Imposing a Sentence under 18 U.S.C. § 3553

The Sixth Circuit Court of Appeals requires that a district court provide a reasonable explanation of its application of the sentencing factors set forth in Title 18 § 3553 of the United States Code in imposing sentence. In *Blackwell*, 459 F.3d at 773, the Sixth Circuit announced:

> The job of the district court is to impose "'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)." In reaching a sentence that complies with the purposes of § 3553(a), the district court must consider the Sentencing Guidelines range and all relevant § 3553 factors. While a district court need not explicitly reference § 3553 or recite a list of factors, it must provide a reasoned explanation for its choice of sentence and its explanation must be sufficiently thorough to permit meaningful appellate review. . . . This Court will only uphold a sentence if it is reasonable. Reasonableness contains two facets: substantive and procedural. In reviewing for reasonableness, the Court employs a presumption for substantive reasonableness.

*Id*. (citations omitted). The Sixth Circuit has recently stated that, "while a district court need not engage in a 'ritualistic incantation' of the § 3553(a) factors, its reasoning must be 'sufficiently

6

detailed to reflect considerations listed in § 3553(a)' and to allow for meaningful appellate review." *United States v. Tanner*, 2010 WL 2545589, No. 09-5177, (6th Cir. June 11, 2010) (*quoting United States v. Bolds*, 511 F.3d 568, 581 and *United States v. Mayberry*, 540 F.3d 506, 518 (6th Cir. 2008)).  Therefore, a district court must impose a reasonable sentence while expressing enough of its rationale to permit an appellate court to understand the basis for the sentence imposed.

      **B.**      **§ 3553(a)(1) - The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

The serious nature of Defendant's criminal conduct, coupled with the fact that Defendant's conduct occurred <u>after</u> his business, RS Sewing, was audited in 2011 by the IRS for having improperly reclassified employees as independent contractors in 2008 in order to avoid collecting and paying over employment taxes on their wages, and <u>after</u> Defendant was personally assessed a penalty for failure to pay over so-called "trust fund taxes" to the IRS, warrants a sentence at the high-end of the agreed upon guideline range of 24-30 months.  The United States respectfully submits that the plea agreement's factual basis accurately recounts the nature and extent of Defendant's conduct.

In his sentencing memorandum filed on April 26, 2019, Defendant seeks to blame everyone but himself for his offense conduct in this case, including his father, his former bookkeeper, his good friend the CPA, etc.  The facts are clear that despite being audited civilly by the IRS in 2011, and being assessed a penalty because he intentionally mis-classified the employees of RS Sewing as independent contractors to avoid the payment of employment taxes, Defendant nonetheless continued "business as usual" and refused to pay over withheld trust fund taxes collected from employees' paychecks to the IRS, and also continued to refuse to pay the employer's portion of the employment taxes for RS Sewing for another five or more years.  This

7

was not an honest mistake by a hard-working man trying to keep his business afloat, but rather the actions of a thief who deliberately refused to pay the taxes over to the IRS as required by law.

One significant issue which Defendant conveniently ignores in his sentencing memorandum is this:  What exactly did Defendant do with the $162,728.94 that he withheld from his employees' paychecks but failed to remit to the IRS ?

Interestingly, according to the IRS Special Agent's report, at the same time Defendant was intentionally misclassifying employees as independent contractors, and failing to pay the withheld taxes over to the IRS, the RS Sewing Quickbooks accounting records reflect that between 2012 and 2015, Defendant transferred a total of $105,280.64 from the RS Sewing bank account to a bank account maintained by "Buying Homes LLC" (a company owned solely by Defendant, Richard Spencer), and which was completely unrelated to RS Sewing.  These transfers were all recorded in RS Sewing's Quickbooks and were verified by reviewing bank account records.

The funds the Defendant transferred to the "Buying Homes LLC" account were trust fund taxes, withheld from the paychecks of RS Sewing's employees, which Defendant willfully failed to pay over to the IRS, despite having been being audited by the IRS and personally fined.  The Defendant alone is to blame for this situation, not his father, his former bookkeeper or his friend the CPA from Columbus.

If the business were to close upon the imprisonment of the Defendant, it would, indeed, be unfortunate, but the only person who is to blame for that happening is the Defendant.   If the Defendant was truly concerned about the well-being of his employees, and cared whether they had jobs and could earn a decent living, then perhaps he should not have stolen their withholding and payroll taxes and used the funds for his own purposes.  The employees have but one person

8

to blame for this result: Richard Spencer.

Defendant's health condition which he claims require the Court impose a sentence other than imprisonment, (i.e., high blood pressure and sleep apnea) are not rare, untreatable conditions which the Bureau of Prisons is unable to effectively manage.  Although somewhat serious if left untreated, these conditions are easily managed with medication and possibly a CPAP machine, and can easily be treated by the medical staff and facilities at the BOP.

Accordingly, a sentence of imprisonment, at the highest end of the range of 24-30 months is warranted and appropriate in this case.

  **C.** **§ 3553(a)(2)(A) - The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense and § 3553(a)(2)(B) - Afford Adequate Deterrence to Criminal Conduct**

The manner in which Defendant executed his criminal conduct, as described above, <u>i.e.,</u> repeated failure to account for, collect and pay over employment taxes and withheld federal income taxes, warrants a sentence at the high-end of the agreed upon guideline range.  Such a sentence will reinforce the rule of law as to individuals engaging in repetitive, willful fraudulent conduct over a period of years.

  **D.** **§ 3553(a)(2)(B) - Afford Adequate Deterrence to Criminal Conduct**

A sentence at the high-end of the agreed upon guideline range is appropriate to deter similarly situated individuals inclined to engage in similar criminal conduct.

  **E.** **§ 3553(a)(2)(C) - Protect the Public from Further Crime of the Defendant**

There is no dispute as to the seriousness of defendant's offense.  The fact that Defendant's conduct was intentional and willful, extended over a period of years, and continued despite the fact that the IRS audited Defendant's business and had determined that Defendant had improperly classified employees as independent contractors <u>specifically for the purpose of</u>

to blame for this result: Richard Spencer.

Defendant's health condition which he claims require the Court impose a sentence other than imprisonment, (i.e., high blood pressure and sleep apnea) are not rare, untreatable conditions which the Bureau of Prisons is unable to effectively manage.  Although somewhat serious if left untreated, these conditions are easily managed with medication and possibly a CPAP machine, and can easily be treated by the medical staff and facilities at the BOP.

Accordingly, a sentence of imprisonment, at the highest end of the range of 24-30 months is warranted and appropriate in this case.

  **C.** **§ 3553(a)(2)(A) - The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense and § 3553(a)(2)(B) - Afford Adequate Deterrence to Criminal Conduct**

The manner in which Defendant executed his criminal conduct, as described above, <u>i.e.,</u> repeated failure to account for, collect and pay over employment taxes and withheld federal income taxes, warrants a sentence at the high-end of the agreed upon guideline range.  Such a sentence will reinforce the rule of law as to individuals engaging in repetitive, willful fraudulent conduct over a period of years.

  **D.** **§ 3553(a)(2)(B) - Afford Adequate Deterrence to Criminal Conduct**

A sentence at the high-end of the agreed upon guideline range is appropriate to deter similarly situated individuals inclined to engage in similar criminal conduct.

  **E.** **§ 3553(a)(2)(C) - Protect the Public from Further Crime of the Defendant**

There is no dispute as to the seriousness of defendant's offense.  The fact that Defendant's conduct was intentional and willful, extended over a period of years, and continued despite the fact that the IRS audited Defendant's business and had determined that Defendant had improperly classified employees as independent contractors <u>specifically for the purpose of</u>

avoiding the payment of employment taxes on their wages clearly warrants a sentence at the high-end of the agreed upon guidelines range of 24-30 months. Imposing a sentence at the high-end of the guidelines range will send a clear message and will serve to protect the public and the government from similar conduct in the future.

### III. Restitution should be ordered against Defendant Richard Spencer.

The plea agreement contemplates that the Defendant will be ordered to pay restitution to the IRS in the amount of $162,728.94 plus interest. As such, Defendant should be ordered to pay restitution to the Internal Revenue Service, in the total amount of $162,728.94, plus interest under the Internal Revenue Code. A computation of taxes and accrued interest through May 6, 2019, was prepared by the IRS, and a copy of said computation was provided to counsel for the Defendant prior to the second disclosure of the PSR. As of May 6, 2019, the total amount of taxes and interest which are due and payable by the Defendant is $197,040.61.

### IV. Conclusion

Defendant engaged in a scheme to reclassify workers from employees to independent contractors to avoid paying employment taxes on their wages from 2008 through 2011. Even after being audited by the IRS for employment tax non-compliance in 2011, and after being personally assessed a penalty under the Internal Revenue Code for failing to collect and pay over employment taxes and withheld income taxes from his employees, Defendant nonetheless persisted, failing to file Forms 941 and pay the employment taxes for RS Sewing. Defendant willfully failed to remit employment taxes for his employees despite the fact that an employee of the business prepared the Forms 941 for Defendant to sign and file, but he refused.

Although Defendant's business withheld federal income taxes, Social Security taxes and Medicare taxes from the workers' earnings from 2011 through 2016, Defendant never made <u>any</u> payments of these withheld taxes to the IRS.  Defendant also failed to pay any of the employer's portion of employment taxes on the workers' earnings during this same time period.  As a result, the Defendant willfully failed to pay a total of approximately $839,355 to the United States of America.

It is extremely ironic, and cannot go unmentioned, that RS Sewing (Defendant's business) is a manufacturer of **American flags**.  In fact, according to RS Sewing's Internet website, **"RS Sewing is the largest supplier of American Made Stick Flags in the United States."**  The web site also boasts **"We also supply many Veterans Organizations and large retailers throughout the United States."**   [emphasis added]    Unlike many defendants who appear before this Court and seek to "wrap themselves" in the American flag, the symbol of our great nation, Defendant herein actually **MAKES** the American flags which are the symbol of our nation, while at the same time willfully refusing to pay the employment taxes generated from the production of those same flags.

The parties have agreed that the appropriate offense level in this case is 20, and that 3 levels should be subtracted based upon the Defendant's acceptance of responsibility.  The resulting offense level is 17, and the Defendant's criminal history score is 1, for a resulting Criminal History Category of I.  The resulting range is 24-30 months.

Defendant should be held to account for the full measure of his conduct. For the reasons set forth above, the United States respectfully submits that a sentence at the high-end of the guidelines range of 24-30 months is appropriate and should be imposed by this Court. The Court is also respectfully requested to order restitution in the amount of $197,040.61, as of May 6, 2019.

                                          Respectfully submitted,

                                          Justin E. Herdman
                                          United States Attorney

By:   /s/ *Robert W. Kern*
         Robert W. Kern (OH: 0005161)
         Carmen E. Henderson (OH: 0089212)
         Assistant U.S. Attorneys
         Suite 400, U.S. Courthouse
         801 West Superior Avenue
         Cleveland, Ohio 44113
         Tel. No. (216) 622-3836/3967
         Fax No. (216) 522-2403
         E-mail: Robert.Kern@usdoj.gov
         E-mail: Carmen.Henderson@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2019, a copy of the foregoing document was filed under seal with the Clerk of Courts. A copy of this filing was sent via email and regular U.S. mail to counsel for the defendant:

                                          /s/ *Robert W. Kern*
                                          Robert W. Kern